OPINION AND ORDER

FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute over the inheritance of certain property of Madge Nutongla Garcia (the Decedent), a member of the village of Hotevilla, who died on March 20, 1991. Included in the Decedent’s estate are several physical structures located within the Village of Hotevil-la, including: a rock house (hereinafter: “Rock House”), an addition to the rock house (“Addition”), and an orchard storage house (“Orchard House”). After the Decedent passed away, her children were unable to agree how this property should be distributed.
Initially, the Decedent’s children attempted to settle their dispute by bringing the matter to a clan relative, Homer Koi-yayumptewa, Mr. Koiyayumptewa, after considering what all interested parties had to say, determined that the Decedent died leaving an oral will, and distributed the property in issue in accordance with what he found to be the terms of her will. *337 Under this distribution, the Rock House went to Marilyn Nutongla Sanchez (Appellant), the Addition to Walter Garcia (Respondent), and the Orchard House to Dell Garcia (Respondent).
All of the parties involved in the distribution settlement initially expressed satisfaction with how Mr. Koiyayumptewa distributed the estate. However, at a later date, Appellant informed the other parties to the settlement that she no longer agreed with Mr. Koiyayumptewa’s distribution. When the other parties to the settlement refused to alter the distribution to met the Appellant’s new demands Appellant brought the matter before the Ho-tevilla Village Board of Directors.
For a variety of reasons, the Board was unable to resolve the case. Ultimately, it waived its authority under the Hopi Constitution to determine the inheritance of the Decedent’s property pursuant to Article III, § 2. After the village waived its jurisdiction, Appellant petitioned the Tribal Court for distribution of the Decedent’s estate.
Appellant, in her Petition for Distribution, asserted that the Decedent had died intestate. She argued that under traditional Hopi laws of intestacy the eldest daughter of a decedent is entitled to receive all of the decedent’s houses located within the decedent’s village. Since the Decedent in this case was a member of the Village of Hotevilla, and Appellant is her eldest daughter, Appellant claims that she is entitled to receive the Rock House, the Addition, and the Orchard House.
In their respective answers, both Respondents contested Appellant’s allegation that the Decedent died intestate, and opposed her claim to the property that they were awarded by Mr. Koiyayumptewa. Respondents asserted in their Answers that the Decedent died leaving a valid oral will, and asked the court to “issue a judicial determination that pursuant to Hopi custom ... an oral will is valid and find that the decedent died leaving a valid oral will and that the decedent’s property has been distributed in accordance with the [oral will].” (Walter Garcia’s Answer, p. 2)
The Trial Court found that the Decedent died leaving a valid oral will, and ordered the following distribution, in accordance with what it found to be the terms of the will: Rock House to Marilyn Nutongla Sanchez (Appellant); Addition to Walter Garcia (Respondent); Orchard House to Dell Garcia (Respondent). This distribution was identical to Mr. Koiyayumptewa’s original distribution.
In her Notice of Appeal, Appellant asserts two grounds for appeal: (1) The Court erred in distributing the estate according to the oral will without first making a determination that the Hopi Tribal Court recognizes oral wills, and; (2) Assuming that the Hopi Tribal Court does recognize oral wills, the Court erred in distributing the estate without first determining what is required to make an oral will valid under Hopi law, and whether the oral will at issue met such requirements.

SYNOPSIS

This court will not reach the issue whether the trial court erred in distributing the property according to the oral will, because we hold that the trial court erred at the outset by allowing the parties to re-litigate an issue in the Tribal Court that had already been resolved at the village level. Homer Koiyayumptewa, the disputants’ clan relative, resolved this dispute before it was brought to the Tribal Court, and his previous decision binds the parties before this court.
Although the trial court erred in allowing the parties to re-litigate the dispute, several of its findings remain useful be *338 cause they are relevant to the issue of certification. Indeed, the trial court’s findings are more than sufficient to demonstrate that the village decision making process in this case met the “fundamental fairness” standard. Because the elements of fundamental fairness have already been demonstrated in the previous hearings before the Tribal Court, this court finds it unnecessary to conduct further hearings on the issue of certification. Instead, we remand this ease to the trial court for immediate certification.

DECISION OF THE COURT

1. The Trial Court Erred in Allouring Appellant to Re-Litigate This Case in the Tribal Court Forum, Because the Village Had Previously Rendered a Binding Decision
Correctly viewed, this case turns upon a preliminary procedural issue that the Respondents raised (albeit obliquely) but the trial court failed to address. In their answers to Appellant’s Petition for Distribution, Respondents asked the trial court to find that Homer Koiyayumptewa had already distributed the property in issue. (Answer of Walter Garcia, at p. 3) Although they did not use the technical legal terminology, the Respondents’ pleadings are best understood as advancing the argument that Appellant’s claim should have been barred from the Tribal Court by the principle of res judicata. See, Honie v. Hopi Tribal Housing Authority, 96-AP-000007, 1 Am. Tribal Law 346, 351, 1998 WL 35281675, at *2-3 (Hopi C.A.1998) (A party’s pleadings may be construed liberally where such construction is necessary to further justice). In other words, the Respondents argued that since the dispute had already been resolved in a proper legal forum, it should not be re-litigated in the Tribal Court. The Respondents are correct.
A. The dispute was heard in a proper legal forum.
Article III, Section 2 of the Hopi Constitution reserves four subject matter areas to the Hopi villages. Section 2(c) reserves to the villages the power to “regulate the inheritance of property of the members of the villages.” The language of this subsection gives rise to an interpretive issue because it provides that inheritance disputes are reserved to “the villages,” but speaks no further on the matter. It does not specify what governmental entity or entities within the village possess the constitutional power to resolve disputes falling under Section 2(c).
The answer to this question is not obvious, because the respective villages at Hopi vary significantly in terms of their governmental structures: some are “traditional” villages, where the preeminent village authority is the kikmongwi; some are “modern” villages, with a formal constitution allocating governmental powers within the village; and most are “hybrid” villages, where the division of power between traditional leaders and popularly elected village board members remains somewhat uncertain.
In a hybrid village legal authority is not concentrated in any one governmental entity. Because Hotevilla is a hybrid village, it cannot be assumed that the language of section 2(c) vests the power to resolve inheritance disputes in the Hotevilla Village Board exclusively. Outside of the Hotevilla Village Board, other Hotevilla village members possess legal authority within the village. The basis of this legal authority is tradition and custom. Traditional legal authorities, as well as the Village Board, may possess the power to resolve inheritance disputes and distribute property pursuant to the Hopi Constitution.
*339 A village member is a traditional legal authority in the area of inheritance law where there is a longstanding custom within the village recognizing his or her power to resolve inheritance disputes. This acknowledged power to resolve inheritance disputes may stem from the village member’s status within the community, or his or her relationship to the parties. For instance, it is a common practice at Hopi for the heirs of a decedent to take any inheritance dispute that may arise among them to the appropriate clan relative, who determines how the decedent’s estate should be distributed. In recognition of this practice, this Court hereby takes judicial notice that there is a “generally known and accepted” custom at Hopi recognizing the appropriate clan relatives as traditional legal authorities with the power to resolve inheritance disputes. See, Hopi Indian Credit Association v. Thomas, AP-001-84, at p. 6 (the courts may take judicial notice of custom where the custom is “generally known and accepted”).
Clan relative settlement is an effective means to resolve intra-village inheritance disputes in a traditional Hopi manner and in a traditional Hopi legal forum. For the Tribal Courts to disregard this method of dispute resolution would be to show disrespect for traditional Hopi law and traditional legal authorities within the villages. Perhaps more to the point, the Hopi Constitution mandates that the Tribal Court give deference to the villages in inheritance matters. Because the villages have exclusive jurisdiction over intra-village inheritance disputes under Article III, -Section 2(c), the Hopi courts cannot overrule a village decision in this area.
Hotevilla had jurisdiction over this inheritance dispute. And, because Mr. Koi-yayumptewa is a clan relative of the disputants, he had legal authority to hear their dispute under Hopi customary law. Thus, Mr. Koiyayumptewa must be viewed as having properly assumed jurisdiction on behalf of the village. In other words, he possessed the authority to render a “village decision” in this case, and the Tribal Court is obligated by the Hopi Constitution to recognize and respect village decisions in the area of inheritance law. Undoubtedly, then, this dispute was heard in a proper legal forum before it was brought to the Tribal Court. The remaining question to address is whether Mi'. Koiyayump-tewa rendered a “final decision” that binds the parties and should have precluded re-litigation in the Tribal Court.
B. Homer Koiyayumptewa’s distribution constitutes a final judgment
The res judicata doctrine will only bar re-litigation of a dispute where a final decision was reached in the dispute resolution forum where the case was originally heard[1]. Thus, Homer Koiyayumptewa’s distribution does not bar re-litigation of this dispute in the Tribal Court unless his decision was final.
We take this opportunity to set forth the rule that a clan relative’s distribution is final when the following conditions are met: (1) all of the disputants agree upon the clan relative who will resolve the dispute, and; (2) the disputants agree at the outset that they will be bound by the final decision of the clan relative, or; (3) all of the disputants manifest their satisfaction with or acquiescence to the final decision of the clan relative after he has rendered his decision. In other words, this court recognizes clan relatives’ traditional authority to arbitrate or mediate inheritance disputes.
*340 Mediation is a fundamentally non-coercive process, whereby all parties must agree upon a proposed resolution or decision before it is given legal effect. However, for mediation to serve any useful purpose, it is necessary that once the parties reach an agreement, the courts recognize that agreement as final and binding. A mediation agreement is often viewed as an enforceable contract[2]. A party that becomes dissatisfied with terms that it has previously accepted nonetheless retains a legal obligation to perform on its promise. It may not renege on its obligations or unilaterally announce that the terms of the agreement must be renegotiated.
The conditions for a binding mediation agreement were satisfied in the case at bar. First, Appellant and the Respondents agreed that Homer Koiyayumptewa would resolve their dispute. The fact that the disputants freely agreed upon Mr. Koi-yayumptewa to resolve their dispute is forceful evidence that both sides viewed him as an impartial, unbiased decision-maker. Second, after Mr. Koiyayumptewa rendered his decision, all of the parties expressed satisfaction with his distribution of the property. Although it is clear that neither side received everything it wanted, the parties’ initial willingness to adhere to Mr. Koiyayumptewa’s decision shows, at least, that the parties felt they had received an adequate opportunity to voice their interests. It seems unlikely that Appellant would have expressed satisfaction with the resolution of the dispute had she felt that Mr. Koiyayumptewa had summarily disregarded her concerns or shown favoritism toward the Respondents.
Having voluntarily submitted to the clan relative dispute resolution process, Appellant was not entitled to take her lawsuit to a different forum merely because she ultimately came to disagree with the result reached by Mr. Koiyayumptewa. It is unclear from the trial record whether Appellant agreed at the outset to be bound by Mr. Koiyayumptewa’s ultimate decision, but this is irrelevant. If the trial record leaves some doubt whether the disputants enlisted Mr. Koiyayumptewa to serve as an arbitrator, it leaves no doubt that he was enlisted to serve a critical role in the dispute resolution process. At the very least, Mr. Koiyayumptewa must be viewed as a mediator to this dispute, and the Appellant must be viewed as having bound herself when she agreed to Mr. Koiyay-umptewa’s solution.
II. The Village Decision May Be Certified Without Further Hearings Because the Trial Court’s Findings Are Clearly Sufficient to Support the “Fundamental Fairness” of the Village Process.
A trial court has the authority to certify village orders in matters reserved to the villages. Honie v. Hopi Tribal Housing Authority, 96-AP-000007, 1 Am. Tribal Law 346, 351, 1998 WL 35281675 at *3 (citing Gaseoma v. The Hopi Tribe, AP-010-93). Certification allows the trial court a means by which to formally recognize a village decision and to proceed to the enforcement of such village decisions. Id. A trial court, however, must hold an evidentiary hearing to determine whether all interested parties have been provided with a fundamentally fair opportunity to participate in the village decision making process before the court can recognize and certify the village decision. Id. Fundamental fairness requires, at a minimum, that all interested parties were pro *341 vided with adequate notice and a meaningful opportunity to be heard at the village level. Id., Johnson v. Belgarde, AP-003-94.
In their Answers, the Respondents asked the Tribal Court to recognize that the property in issue had already been distributed—in other words, that the dispute should not be re-litigated in the Tribal Court forum. However, the Respondents did not contest jurisdiction and ask the Tribal Court to dismiss the case entirely. Instead, the Respondents asked the Tribal Court to affirm the decision of Homer Koiyayumptewa. Essentially, then, the Respondents were trying to accomplish through their Answers what would normally be accomplished by filing a Petition for Certification of the village decision.
The Hopi courts may construe a party’s pleadings liberally where such construction is necessary to further justice. Honie v. Hopi Tribal Housing Authority, 96-AP-000007, 1998 WL 35281675 at *2-3, 1 Am. Tribal Law 346, 351 (Hopi C.A. 1998). We are of the view that it best serves the interests of justice in this case to interpret the Respondents’ Answers as constructive Petitions for Certification. The Respondents asked the lower court to recognize Homer Koiyayumptewa’s decision. And, despite the fact that the Tribal Court did not deem its Order a “certification” of the village decision, its disposition of the case in fact had the same effect as certifying Homer Koiyayumptewa’s prior distribution. The trial judge’s distribution matched exactly Homer Koiyayumptewa’s earlier distribution of the property.
Recognizing that the Respondents were attempting to petition for certification, and that the trial court’s decision had the practical effect of granting the Respondent’s constructive petition, this court must review whether the trial court’s findings established the fundamental fairness of the village proceedings.
This court hereby promulgates the rule that a clan relative’s distribution is fundamentally fair and will be certified by the Tribal Court where the court can establish that: (1) the parties agreed to be bound by the relative’s decision before the relative rendered his decision[3] (i.e., the parties enlisted the clan relative to serve as an arbitrator), or; (2) the parties agreed to abide by, or manifested their satisfaction with, the relative’s distribution after he rendered his decision (i.e., the parties enlisted the clan relative to serve as a mediator).
After hearing extensive testimony over the course of two separate hearings, the trial court in this case made the two findings that are crucial to establish the fundamental fairness of a clan relative’s distribution settlement. First, it found that Appellant agreed to have Homer Koiyay-umptewa resolve this inheritance dispute. Second, it found that Appellant initially expressed satisfaction with Mr. Koiyayump-tewa’s distribution of the property, and that it was not until “a later date [that Appellant] informed the parties she no longer agreed with the distribution.. .. ” 95-CV-000110, at 2.
These findings are more than sufficient to demonstrate the presence of fundamental fairness in the village decision-making process. Since the Appellant agreed to have Homer Koiyayumptewa resolve the *342 dispute, there is no question that she had “adequate notice.” And, the fact that she expressed satisfaction with Mr. Koiyay-umptewa’s decision proves that she had a “meaningful opportunity to be heard.”
Given that the trial court has already issued findings sufficient to satisfy the fundamental fairness standard established under Johnson and support certification of the village decision, it would be wasteful to require further certification hearings. Thus, on the unique facts of this case, this court is compelled to construe the trial court hearings as constructive certification hearings and rule that Homer Koiyayump-tewa’s decision must be certified. This certification will bind Appellant and the Respondents to Homer Koiyayumptewa’s decision.
At first glance, this court’s decision to constructively interpret the Respondents’ Answers as petitions for certification may appear to conflict with our holding in Horde. Horde requires that a party that prevails at the village level and requests trial court certification of the village decision to provide public notice before a certification hearing may be held in the Tribal Court. This notice requirement is designed to assure that third parties who may have an interest in the land at issue, but who may not have had the opportunity to participate in the village decision-making process, are afforded the opportunity to demonstrate the unfairness of the village process at the trial court certification hearing.
In this case, there was no public notice of the trial court hearing. But, where clan relative arbitration or mediation is concerned, the notice requirement is unnecessary, because the clan relative’s decision binds only those parties who participated in the arbitration or mediation process. Because clan relative decisions are not binding with respect to third parties who did not participate in the arbitration or mediation, certifying the village decision does not conflict with the notice policy of Horde. Homer Koiyayumptewa’s decision in this case binds Appellant and the Respondents, who willingly participated in the clan relative distribution process. Thus, Mr. Koiyayumptewa’s decision shall be certified and enforceable with respect to the parties in this case.

ORDER OF THE COURT

This case is REMANDED to the Tribal Court for immediate certification of the village decision (Mr. Koiyayumptewa’s distribution order). Under this decision, the distribution of the property is as follows: Rock House to Marilyn Nutongla Sanchez (Appellant); Addition to Walter Garcia (Respondent); Orchard House to Dell Garcia (Respondent).

. Hazard, James. Civil Procedure (4th ed., 1985), § 11.4, at 591.

. See, Cound, John J., Friedenthal, Jack H., Miller, Arthur R., and Sexton, John E. Civil Procedure (5th ed.1989) at 1240-1241.

. However, where die parties enlist the clan relative in this arbitral capacity, a party may disprove the presence of fundamental fairness at the Tribal Court hearing if he or she is able to show that: (1) the arbitrator was biased or incompetent, and; (2) the party was not aware of this bias or incompetence prior to agreeing upon the arbitrator.