OPINION AND ORDER
FRED LOMAYESVA, Chief Justice.
Factual and Procedural History
[1] On July 11, 2002, the Hopi Tribal Council formally appointed Appellant Gary LaRance as Chief Judge of the Hopi Tribal Court via Hopi Tribal Resolution H-088-2002. Resolution H-088-2002 provided that Appellant could only be terminated for cause and by following the procedures set out under Hopi Tribal Ordinance 21, Section 1.5.1. On August 28, 2002, Chairman Wayne Taylor entered into an employment contract with Appellant to serve as Chief Judge.
[2] On April 23, 2007, Vice Chairman Todd Honyaoma, Sr., notified Chief Judge Gary LaRance, by letter that he was calling a Special Meeting of the Hopi Tribal Council “for the termination of your employment with the Hopi Tribal Courts and the Hopi Tribe.” Attached to the letter notice was a Statement of Written Charges, a copy of Action Item No. 048-2007 and a draft resolution. The Written Charges stated:

“Factual Basis For Removal

Comes Now, Todd D. Honyaoma, Sr., Vice Chairman of The Hopi Tribe, in my capacity as immediate supervisor of the Tribal Court and Chief Judge Gary LaRance, and hereby submit written charges for removal of Chief Judge Gary LaRance as required under Ordinance 21, Chapter 1, Section 1.5.1 as follows: 1. ARREST FOR DISORDERLY CONDUCT—It has been alleged by local law enforcement officials that Gary LaRance, did on or about the afternoon of April 14, 2007 at or near the Hopi Jr./Sr. High School softball field, engage in behavior constituting the offense of disorderly conduct, which is a criminal violation of Hopi Tribal Ordinance 21, Section 3.3.21. In particular it has been alleged by law enforcement that Gary LaRance caused a public inconvenience, annoyance, alarm, or created a risk thereof by engaging in an altercation with and assault upon Jacob Koopee Jr., the alleged victim of a physical assault by LaRance. This incident occurred in full public view at a Hopi High School girl’s softball game between the Hopi High Bruins and the Window Rock Scouts on the day in question. The altercation and assault consisted of yelling and a physical fight, *347 which reportedly caused both teams to lose concentration and resulted in spectators who witnessed the confrontation stepping in to break up the fight....
2. ARREST FOR ASSAULT AND BATTERY—It has been further alleged by local law enforcement officers that Gary LaRance did on or about the afternoon of April 14, 2007, at or near the Hopi Jr./Sr. High School Softball field engage in behavior constituting the criminal offense of Assault and Battery,’ which is a violation of Hopi Tribal Ordinance 21, Section 3.3.4. In particular, it has been alleged that Gary LaRance did willfully, knowingly, and unlawfully use force or violence upon the person of Jacob Koopee, Jr., the alleged victim of the assault, by grabbing hold of Jacob from behind as he sat on the top bleachers watching the game, LaRance allegedly pulled Jacob Koopee backwards with such force that Jacob had to hold onto the bleachers with his feet in order to keep from being pulled off the bleachers and thrown to the ground. It has been further alleged that Judge LaRance hit Jacob on the right cheek area of his face with a closed fist causing swelling and bruises on his face. It is also alleged that as a result of Jacob Koopee having to hold onto the bleachers with his feet, he experienced swelling, pain, and redness around his ankle area....
3. On the afternoon of Saturday, April 14, 2007, LaRance was arrested by the Hopi B1A Police at the Hopi Tribal Court.
4. On April 14, 2007, at or about 11:00 p.m. LaRance was released from custody at the Keams Canyon Jail after signing an Agreement to Appear in Court, stating that ‘I, [Gary LaRance] agree that if I am released from custody today, I will appear in the Hopi Tribal Courts on the following date and time for arraignment on the criminal charges for which I was arrested.’ The time and date of LaRance’s arraignment was scheduled for Monday, April 16, 2007 at 10:00 a.m. LaRance signed the document dated April 14, 2007, as a defendant....
5. On April 16, 2007, Monday, LaRance submitted a Motion to Continue Arraignment that was set for the above date ... and requesting an additional fourteen (14) days to hire an attorney to represent him on this matter. Further, on April 16, 2007, the Hopi Tribe’s Detention Steering Committee, which LaRance is a member of, had a meeting with DLR Group, MGT of America, Inc. in Phoenix regarding Hopi’s detention issues, which I as the Vice Chairman am also a member of and attended....
6. On April 16, 2007, the Hopi Tribal Court issued an order denying LaRance’s Motion to Continue Arraignment hearing and denying his Motion to Disqualify’ the Judge assigned to the case. LaRance failed to appear at the arraignment and the Court issued a bench warrant for LaRance’s arrest for failure to appear and set bail/bond of $3,000.00....
7. On April 26, 2007, LaRance was scheduled to appear before the Hopi Tribal Court for arraignment but due to his non-appearance this date, the court issued a Warrant for Arrest. The court also set bond in the amount of $3,000....
8. On Tuesday, April 17, 2007, a Warrant for Arrest was served on LaRance by Police Officer Gibson Namoki at 9:12 a.m. and Officer Namoki proceeded to read LaRance his Miranda Rights at 9:12 a.m. ...
9. On Wednesday, April 18, 2007, LaRance was ordered released from custody by an Order of Recognizance Release with certain conditions: That LaRance *348 shall not have any contact with the alleged victim, Jacob Koopee, Jr., until final disposition of the matter or until further orders of the court.... Further, LaRance is scheduled to be arraigned on the pending criminal charges on Monday, May 1, 2007, at 1:30 p.m.

Came to Remove Judge

Because of the above stated facts, Judge LaRance has lost the trust and confidence of the Hopi public in his ability to act impartially in the furtherance of his judicial duties and to enforce the laws of the Hopi Tribe. The fact that Judge LaRance engaged in a public brawl and was thereafter arrested, incarcerated and is now proceeding through the criminal court system as a defendant is alone sufficient cause for his immediate removal from his position as Chief Judge of the Hopi Tribal Court. The harm caused to the Hopi Judiciary, to the Hopi public and to the Hopi Tribe by the conduct of Judge LaRance as set out herein, independent of any subsequent findings by the Hopi Tribal Court of LaRance’s criminal violations, is cause enough for removal. In addition, the following also supports a finding by the Tribal Council of cause for removal:
1.There is a public outcry among the Hopi concerning the extreme impropriety of the Chief Judge of the Hopi Tribal Court, an officer at the highest level of the Hopi Judicial System, engaging in conduct warranting his arrest under the laws of the Hopi Tribe, especially in a public place. The obvious question in the minds of the public is how LaRance can continue to make decisions on criminal matters pending in the Hopi Tribal Court and sentence defendants when he himself has allegedly violated the laws of the Tribe.
2. By his behavior, LaRance has shown and disrespect for the Hopi judicial system and brought embarrassment upon the Hopi Tribe as a result of the broad public knowledge of his conduct, as indicated by coverage of the incident in the Independent newspaper on Tuesday, April 17, 2007....
3. By his behavior, LaRance has damaged the integrity of the Hopi Judicial System and of the Hopi Tribe by engaging in the conduct that occurred on April 14, 2007 as described herein.”
Statement of Written Charges for Removal, pp. 1-6.
At no time prior to the service on Judge LaRance had the Tribal Council considered or approved the filing of charges against Judge LaRance or the precise language of the Written Charges which the Vice Chairman caused to be served on the Judge.
[3] On April 23, 2007, the Viee Chairman called a Special Meeting of the Hopi Tribal Council to consider adoption of Action Item No. 048-2007 (“To terminate the Employment of Gary LaRance as Chief Judge of the Hopi Tribal Court”). The Special Meeting took place on May 1st, 2007. The Action Item “asks the Hopi Tribal Council to remove Gary LaRance from his position as Chief Judge of the Hopi Tribal Courts.” The Action Item further stated that “Trial Judges may be removed for cause by the Hopi Tribal Council, but only after a hearing before said Council on written charges.” The Action Item did not state any basis for finding cause.
[4] On May 1, 2007, prior to the eventual May 21 probable cause hearing and arraignment, the Hopi Tribal Council met in Special Session to consider the removal of Appellant. Vice Chairman Todd Hon-yaoma, Sr. presided over the session. After a significant amount of debate about what process should be followed, without *349 the presentation of any evidence to establish cause, and without even asking Judge LaRance to respond specifically to the matters contained in the Written Charges, Representative Phillip Quochytewa, Sr. made a motion to approve Action Item 0-18-2007 and what would become Resolution H-041-2007, which was seconded by Representative Clifford Qotsaquahu. The motion carried (was passed) by a vote of 11 in favor, 6 against, with 3 abstentions.
[5] On May 7, 2007, Gary LaRance filed a Complaint against the Hopi Tribal Council, citing 14 counts. It appears from the record that an attempt was made to mediate the dispute on April 16, 2008, but the parties could not reach an agreement. On April 24, 2008, Appellant filed his First Amended Complaint, reducing the 14 counts to 11 counts. On July 3, 2008, Appellees/Defendants below filed a series of Motions to Dismiss and Motions for Summary Judgment on the various counts. A hearing on the motions was held on September 19, 2008. More than a year later, on December 16, 2009, Pro Tem trial judge William McCulley found against Appellant on all 11 counts. No explanation for the year delay in ruling on the motions appears in the record. The trial judge granted Defendants’ Motions for Summary Judgment on Counts One, Two, Four, and Five, as follows:

Count One

[6] Appellant argued that Vice Chairman Todd Honyaoma, Sr. violated Article 1, Sections 1 & 2, and Article III, Section 3 of the Hopi Constitution and By-Laws[1] when be called a special meeting to consider Action Item 048-2007 to terminate Appellant’s employment as Chief Judge. Specifically he argued that Vice Chairman Honyaoma had no constitutional or other authority to call and preside over a Special Meeting of the Hopi Tribal Council on May 1, 2007, as Chairman Nuvamsa was constitutionally vested with that power, and where Chairman Nuvamsa was neither absent, nor did he authorize the Vice Chairman to act on his behalf. Appellees in their Motion to Dismiss/Motion for Partial. Summary Judgment, argued that the trial court lacked subject matter jurisdiction over this claim because it was beyond the scope of the waiver of sovereign immunity in Appellant’s employment contract. The trial judge agreed and found that Count One was barred by the Tribe’s sovereign immunity and granted Defendants’ Motion for Summary Judgment.

Count Two

[7] Appellant argued that Defendants violated Hopi Tribal Ordinance 21, Section 1.5.1,[2] where Section 1.5.1 requires a “full, quasi-judicial, impeachment type hearing,” and where such hearing is called by, or at the direction of, the Tribal Council, with written charges filed at the direction of Council. Appellant argues that Vice Chairman Honyaoma had no authority to *350 call such a hearing, that his proposed Action Item 048-2007 and its attachments were not filed at the direction of the Council, and that Special Session resulting in his termination, was not a “full, quasi-judicial, impeachment type hearing.” Also, because Section 1.5.1 was incorporated into both his most recent appointment resolution (Hopi Resolution H-088-2002) and the employment contract of 2002, these were also violated and/or breached. The trial judge ruled that in the absence of specific guidance or requirements, the requirements of fundamental fairness and due process are met by providing reasonable notice and an opportunity to be heard. The trial judge found that “... His claimed entitlements [a full, quasi-judicial, impeachment type hearing] are not supported by the plain language of the statute or due process requirements of Hopi concepts of fundamental fairness. The Tribal Council complies with the plain language of the statute by providing written notice of the hearing more than five days before the hearing. He [Appellant] was provided an opportunity to participate in the hearing.” The trial judge granted Defendants’ Motion for Summary Judgment.

Counts Four & Five

[8] Appellant argued that Defendants violated his due process rights under the Indian Civil Rights Act[3] when they adopted the Action Item and Resolution of May 1.2007 which deprived him of his liberty and property interests in his appointment and employment as Chief Judge. Appellant also argued that Defendants violated his right to Hopi fundamental fairness and Hopi Ordinance 21, Section 1.5.1 (in that it implicitly provides a judge Hopi fundamental fairness in removal proceedings), “in the manner, methods and procedures it used to terminate and remove [Appellant] as Chief Judge.” The trial judge found that Appellant received notice of the proposed Council actions and the factual basis supporting them eight days before the May 1, 2007 hearing, and that he attended and participated in the hearing. He further found that “This process fully satisfied the requirements of fundamental fairness described by the Hopi Appellate Court and the Indian Civil Rights Act.” The trial judge also found that Appellant “is not an officer or representative and is therefore not entitled to [Article V, Section 2] procedures.”[4] The trial judge then granted Defendants’ Motion for Summary Judgment on both counts.
[9] On January 4, 2010, Appellant filed a Notice of Appeal from a “Summary Judgment Order” of the trial court entered on December 16, 2009. Appellant filed his Brief for Appellant on February 3.2010. In his brief Appellant withdraws his appeal as to Counts Three and Six through Eleven, and preserves his appeal of Counts One, Two, Four, and Five. Appellees submitted their Answering Brief of Respondents on February 23, 2010.
[10] On March 29, 2010, Appellant filed a Request to Set for Oral Argument, and on May 6, 2010, Appellant filed Appellant’s Withdrawal of Motion to Set for Oral Argument and Motion to Render a Final Decision Based Solely on the Briefs and Record. As of the date of the issuance of *351 this Opinion and Order, Appellees have filed no objections to either of these motions.
Issues Raised on Appeal
(1) Whether the trial judge erred in finding that Appellant’s claim under Count One (that the Vice Chairman violated the Hopi Constitution in calling a Special Session to terminate his employment) was barred by the Tribe’s sovereign immunity?
(2) Whether the trial judge erred in finding that Hopi Ordinance 21, Section 1.5.1. does not require a “full, quasi-judicial impeachment type hearing” to remove the Chief Judge of the Hopi Tribal Court?
(3) Whether the trial judge erred in finding that the only process that was required under Hopi law was notice and an opportunity to be heard?
(4) Whether Appellant was deprived of his liberty and property interest (in his appointment and employment as Chief Judge) unfairly? Was there proper notice of the hearing? Was the hearing process fair?
(5)Whether Appellant’s employment contract has been breached?
Discussion
I. The trial judge erred in finding that Appellant’s claim under Count One was barred by the Tribe’s sovereign immunity,
Appellant in his brief argues that the trial judge’s dismissal of Count One on the grounds of sovereign immunity is reversible error. Specifically he argues that because the Vice Chairman was acting beyond the scope of his authority in calling the May 1, 2007 Special Session of the Tribal Council where he was removed,[5] principles of sovereign immunity are not applicable under Hopi law. He cites to a series of Hopi Appellate Court eases for the proposition that sovereign immunity is not a bar to a cause of action for a declaratory judgment against a tribal official where such official acts beyond the scope of his authority (citing to Youvella v. Dallas (Youvella I), No. 96-AP-00002 (Hopi App.Ct.1997); Youvella v. Dallas (Youvella II), 1 Am. Tribal Law 338 (Hopi App.Ct.1998); Youvella v. Dallas (Youvella III), No. 96-AP-00002 (Hopi App.Ct.2000); Honyaoma v. Nuvamsa, No. 2007-AP-0005 (Hopi App.Ct.2008)).
Appellant’s argument appears in response to Appellees’ assertions in their Motion to Dismiss/Partial Summary Judgment Re: Count One, that the waiver language in Appellant’s employment contract does not go far enough. Appellees argue that the employment contract contains a limited waiver of the Hopi Tribe’s sovereign immunity and that the scope of the waiver “is clearly limited to interpretation of the terms of his contract and the issuance of an order directing the parties to comply with the terms of this contract.” Motion to Dismiss/Partial Summary Judgment Re: Count One, p. 6. Specifically, Appellees argue that Appellant’s claims regarding the legal status of the Chairman and Vice Chairman during the period between April 23, 2007 through May 1, 2007, are barred by sovereign immunity. We disagree, at least to the extent that the question of the authority of the Vice Chair *352 man to call a Special Session is relevant to consideration of the removal requirements under the contract and Hopi law.
[13] We find, however, that we need not reach the inapplicability of the sovereign immunity doctrine due to an official’s unauthorized actions, where Appellant’s employment contract governs the issue and where the scope of the waiver in the contract extends to Appellant’s Count One claims for declaratory relief.
[14] We find that Appellant’s 2002 employment contract waives the Tribe’s sovereign immunity to suit in the Hopi Tribal Court “to the extent necessary to resolve any dispute under [the] contract between the Employee and the Tribe.” 2002 Employment Contract, p. 4. We further find that that the 2002 contract requires that “Employee may be removed ... and this contract may be terminated only for cause, in accordance with the procedures of Ordinance 21, Chapter 1, Section 1.5.1.” 2002 Employment Contract, p. 3. Section 1.5.1 reads: “... Trial judges may be removed for cause by the Hopi Tribal Council, but only after a hearing before said Council on written charges delivered to the judge sought to be removed at least five days before the hearing.”
II. The trial judge erred in finding that Hopi Ordinance 21, Section 1.5.1. does not require a “full, quasi-judicial im.peachment type hearing” to remove the Chief Judge of the Hopi Tribal Court.
[15] Appellant in his brief characterizes Section 1.5.1 of Hopi Tribal Ordinance 21, as an “impeachment” provision— “a judicial and adjudicatory process ... [with] at a minimum, ... the following procedures and rights ...” Appellant’s Brief, p. 17. He asks this Court to interpret Section 1.5.1 in light of the dual doctrines of separation of powers and judicial independence. Appellant’s Brief, p. 22. Appellees argue that Appellants claims here are not “rooted in any applicable contract, statute, constitutional provision or administrative regulation.” Appellee’s Brief at 24. However, Appellant does cite to Hopi Tribal Resolutions H-3-81 and H~ 14-96 whereby the Hopi Tribal Council reaffirmed its commitment to an independent judiciary:

Resolution H-3-81

“WHEREAS, separation of the Judicial branch from the Legislative and Executive branches has been affirmed by the Hopi Tribal Council; and
WHEREAS, questions have arisen whether the Judicial branch is separated from the Legislative and Executive branch; and
WHEREAS, the Law and Order Committee has recommended that the Judicial branch independence be reaffirmed.
NOW THEREFORE BE IT RESOLVED by the Hop! Tribal Council that the independence of the Judicial branch is hereby reaffirmed.”

Resolution H-H-96

“WHEREAS, the Hopi Tribal Council has affirmed the independence of the Judicial Branch; and
WHEREAS, questions concerning the interaction between the Tribal Administration and Judicial Branch have been raised; and
WHEREAS, there is a need to insure [sic] that the Judicial Branch is free from direct or indirect influence or the possibility of such influence in order to protect the integrity and independence of the judicial branch; and
WHEREAS, Tribal Administration tends to treat the Judicial Branch as a department rather than a Branch of Tribal Government; and
*353 WHEREAS, the potential for administrative interference is inappropriate to the goat of a strong, independent judicial system in which judicial decisions are free from potential influence by Tribal Administration.
NOW THEREFORE BE IT RESOLVED by the Hopi Tribal Council that the administration of the Judicial Branch is vested with the Judicial Branch.”
Appellant also points to the adjudicatory nature of the Article V, Section 2. removal proceedings[6] for two former Council representatives,[7] two Vice ’ Chairmen,[8] and one Chairman[9]—hearings over which he himself presided (“I, as Chief Judge, presided over all four impeachment hearings in the Hopi Tribal Council chambers.”). Appellant’s Brief, p. 25.
[16] We take note that the question about the adjudicatory versus legislative character of a Section 1.5.1 hearing was also debated by the Council in Appellant’s case. The Vice Chairman, and Presiding Officer of the Council, Todd Honyaoma, Sr., characterized the May 1 Special Session to be legislative in nature concerning a regular employee’s contract issue:
“Vice Chairman Honyaoma, Sr. said they checked into the Constitution and clarified that the Chief Judge is not a Constitutional Officer. He was selected by contract.” Transcript, p. 4.
“Again, I just wanna say that this is not an administrative issue; this is a legislative issue with the Tribal Council. If it did specify in the contract that would delegate the Chairman or the Vice Chairman to take that administrative matter, then it wouldn’t be here, it would have been negotiated or whatever the terms would be, but that’s not the issue of the case. The contract is approved by the Tribal Council so that is why it came to you.” Transcript, p. 29.
(Emphasis supplied). However, the Vice Chairman, earlier in the session, characterized the session differently:
“Okay, and with that, I wanna say that, yes, it may be a recommendation again, allegations, but it’s still the responsibility of the Tribal Council. You are the ones that approved that, this is yours. Again, I followed the process. Someone *354 spoke to that, about the fair hearing, this is the fair hearing that we’re going through right now.” Transcript, p. 21.
Representative Caleb Johnson disagreed with the “legislative” characterization, arguing that the Chief Judge is a Constitutional Officer, and speculating that the process for his removal should be adjudicatory in nature:
“Rep Johnson said he disagrees that Chief Judge is not an officer that is subject to the Constitution, Article 5, Section 1., which says that ‘Any Chairman, Vice Chairman, representative or other officer found guilty in a tribal court ... ’ so the Chief Judge and others who are officers of the Tribe are included in that definition so he would say that Chief Judge LaRance is an officer of the Tribe.” Transcript, p. 4,
“... we’ll be back in session with the process, which will probably be similar to the process we used when we charge something [sic] with serious neglect of duty because, like first impression cases, we don’t have any precedent as to how this is gonna go. The only thing we’ve heard is that bang, ... we’re voted and he gets kicked out, that’s not a process to me, that’s ... just kind of a decision that, on top of our head, there’s no justice in that so ... we’re still gonna be here going through a process, which would be something like serious neglect of duty, we’ll have so many days which they will be given and than [sic] we’ll have to hire a Prosecutor for another $70,000 and than [sic] the Prosecutor will come in and bring this case against the Judge, and the Judge will of course have his attorneys and we’re gonna have another two or three days of hearings before we come to a decision, which is the process we use when somebody’s charged with serious neglect of duty.” Transcript, p. 24.
[17] The characterization of Section 1.5.1 hearings raises a question of first impression under Hopi law. We interpret Section 1.5.1 to require an impeachment style adjudicatory hearing before a judge can be removed for a number of compelling reasons. First, judges, and in this case, the Chief Judge of the entire Hopi judicial system, should be insulated from both executive and legislative interference to be free to make judgments in cases based upon legal principles and facts and not based upon whether he or she might be removed for doing so. Anything less than an adjudicatory process for removal makes it far too easy for the Chairman’s/Vice Chairman’s Office and/or the Council to tamper with how the judges decide their cases. Second, members of past Hopi Tribal Councils have expressed a commitment to judicial independence in the passage of Hopi Resolutions H-3-81 and H-14-69, and these resolutions have never been rescinded. Third, past Councils have demonstrated that they value and can oversee adjudicatory hearing processes to remove high government officials for serious neglect of duty under Article V, Section 2 of the Hopi Constitution, and have done so in at least four instances. For these reasons, we find that the trial judge below erred in characterizing Section 1.5.1 as requiring anything less than an impeachment hearing with an adjudicatory process.
III. The trial judge erred in finding that the only process that was required under Hopi law was notice and, an opportunity to be heard?
[18] Citing our case of Johnson v. Bel-garde, the trial judge below found that the Section 1.5.1 judicial removal hearing process required only that Appellant be given reasonable notice and an opportunity to be *355 heard.[10] Summary Judgment Order, p. 14. However, Johnson is plainly distinguishable as it applied specifically to ensuring fair processes at the village, not the tribal level. Much more process is required at the tribal level both by statute and in the growing body of the Hopi common law. In Johnson, this Court was initially concerned to limit the full application of adjudicatory (adversarial trial) processes to tribal institutions like the Tribal Court, or for example, the Tribal Council in Article V, Section 2, hearings. It specifically demanded less formal processes for village proceedings. The reasoning behind this distinction was to respect village sovereignty and to protect traditional and contemporary’ village bodies from being required to replicate western-style court process—unless they themselves chose to do so. The “notice and an opportunity to be heard” requirement that Johnson applied to village proceedings therefore was a compromise. It provided minimally fair process without imposing the full-blown adversarial apparatus that would come with a requirements of “due process” imposed on the Tribe. The application of only the minimally fair process requirements to a judicial removal proceeding, indeed to remove a Chief Judge, would seriously undermine both judicial independence, and consequently the integrity of fair judging in future cases. In short, it might inappropriately encourage political interference with the judiciary in violation of both sound principles of Hopi justice and existing Tribal Council Resolutions supporting judicial independence. Hopi Resolutions H-3-81 and H-14-69. It would also undermine the full-blown due process of an adjudicatory impeachment proceeding that should be provided before a tribal official, in this case the Chief Judge of the Tribal Court is deprived by his government of his most basic property right—his job. We find that the trial judge below erred in applying the ‘minimal fairness protections required of villages to the actions of the tribal government.
IV. Appellant was deprived of his property interest (in his appointment and e mployment as Chief Judge) unfairly.
A. Appellant was never formally charged by the Tribal Council before he was removed
[19] Appellant argues in his brief that pursuant to Section 1.5.1, the impeachment power lay solely and exclusively with the Hopi Tribal Council. Appellant’s Brief, p. 17. He further argues that Vice Chairman Honyaoma initiated impeachment proceedings without prior Council authorization, and that the Council adopted Resolution H-041-2007 removing Appellant as Chief Judge at the May 1 Special Session, without ever reviewing or approving the charges. This argument is separate and distinct from Appellant’s Article II, Section 3 argument[11] that the Vice Chairman was not authorized under the Constitution to call a Special Session of the Council. Rather, here Appellant argues that under Section 1.5.1, only the Council has the power to lodge or deliver charges and to schedule a Section 1.5.1 impeachment hearing: “... Trial judges may be removed for cause by the Hopi Tribal Council but only after a hearing before said Council on written charges delivered to the judge ...” Appellant’s Brief, p. 17. *356 At least two Council members expressed similar concerns. Early in the Special Session Representatives Aleñe Garcia and Caleb Johnson expressed concern that the Council be given time to consider whether there was support for the charges and whether they would formally adopt the Vice Chairman’s charges as their own formal charges:
“Rep Garcia said she also has problems with the resolution. Allegations are being made ... in the first enacting clause, it states that the allegations are true, but the Tribal Council does not know if they are true.” Transcript, p. 4. “Rep Johnson: First thing is that the charges that were prepared and Filed are not the charges of the Tribal Council. They are charges of the Vice Chairman and I thought at some point, that we would, as a Council, decide whether those charges amount to a cause and this is why I had asked a lot of questions about ... that cause this morning. And so I think we’re at the point were we need to consider whether the charges which the Vice Chairman has filed on his own behalf meet the criteria of a cause that we can then go forward with. I think that’s where we’re at as far as I’m concerned ... the charges were filed by the Vice Chairman and these charges are not the charges that the Tribal Council as a whole have either adopted or support by a vote in the Tribal Council so it seems to me that that’s the first thing that we need to do this afternoon, is to discuss that issue and then if we decide that there, is reasonable enough of a cause then we should by a motion, ... we should then prepare charges to be filed against the Chief Judge ... ” Transcript, p. 10.
However, the Council never acted to formally adopt the charges before voting to remove. We agree with Appellant’s reading of Section 1.5.1. The Tribal Council, not the Vice-Chairman, is solely and exclusively authorized to adopt written charges, to deliver them, and to call an impeachment hearing under Section 1.5.1. There is no dispute between the parties that it was the Vice Chairman who initiated and put forth the written charges against Appellant before the Council along with a draft of the resolution which executed the removal of Appellant as Chief Judge. It is also not disputed that the Council voted to adopt the removal resolution before ever voting to approve and adopt the charges themselves. The Tribal Council simply has no authority to finally abdicate or delegate to the Vice Chairman its own authority to initiate removal or impeachment proceedings against tribal judges. The Tribal Council must approve the initiation of such proceedings and the form of notice of the written charges before any such proceedings can commence. The Tribal Council simply never voted to initiate removal proceedings against the Chief Judge nor did they vote to approve the nature and form of the charges in this case. Thus, no removal proceedings were ever properly initiated by the Tribal Council in conformity with Section 1.5.1 against Chief Judge LaRance.
B. No adjudicatory hearing to remove for cause ever took place—Cause to remove was never properly alleged nor was any evidence presented, before Council voted to remove Appellant.
1. The charging document lacked a standard for “cause”
[20] Neither the charging document (the Statement of Written Charges) nor the Vice Chairman who presided over the May 1 hearing before the Hopi Tribal Council, ever articulated the legal (or intended) standard for “cause” to remove under Section 1.5.1. Indeed, two Council *357 members felt that this was a serious enough problem to disapprove the removal action item altogether. Representative Johnson made a motion to disapprove the action item due to the lack of a standard for the term “cause”:
“I’m going to make a motion to disapprove this Action Item. The reason why I say that is because we don’t have a process to determine what the cause is. In fact, we don’t even know the definition of cause. And that’s what this ordinance is talking about. He can be removed for cause. Now, is the cause going to be simply because he was in jail for some two or three hours? I that a cause for removal? Where’s the justice in that? And the Chief Judge is not just any ordinary guy off the street.... The Chief Judge is the Chief Judge of the Hopi court system. And so, it seems to me that wre need to be fair, we need to have a process in place that will be impartial. The Vice Chairman is not impartial, why, because he brought the charges. The person that brings the charges is no longer impartial.... We have to have some presiding officer that is totally impartial and the Chief Judge was in those cases that came before the Tribal Council on serious neglect of duty. He was impartial so we have to have someone like that to ... go through the process, but we haven’t established a process. We can’t just go from ordinance provision to a thing like this .... if we remove him on the basis of what is happening here, that’s totally injustice, totally, absolutely, ... injustice ... and do you wanna be called an injustice Tribal Council? ... So I think what we need to do is set up a process that we can use, which would give the Chief Judges [sic] his day ... before this body.” Transcript, p. 29.
The motion was seconded by Representative Garcia. After a debate about the problems with “negative motions,” Vice Chairman Honyaoma presided over a vote of 4 in favor and 16 opposed. Shortly thereafter, Representative Phillip Quochy-tewa, Sr. made a motion to approve Action Item 48-2007 (and the removal resolution H-041-2007), which was seconded by Representative Clifford Qotsaquahu. The motion carried (was passed) by a vote of 11 in favor, 6 against, with 3 abstentions.
2. The stated charges (offered to support a finding of cause) were deficient in and of themselves
[21] The charging document (the Statement of Written Charges) made five charges against Appellant: (1) Appellant was arrested for disorderly conduct; (2) Appellant was arrested for assault and battery; (3) Appellant was arrested for failure to appear; (4) Appellant engaged in conduct warranting his arrest; and (5) Appellant has shown disregard and disrespect for the Hopi judicial system and has damaged its integrity “by engaging in the conduct that occurred on April 14, 2007."
[22] The first three charges, and possibly the fourth, improperly treated the mere fact of arrest (without conviction) as grounds for removal: “The fact that Judge LaRance ... was ... arrested, incarcerated and is now proceeding through the criminal court system as a defendant is alone sufficient cause for his immediate removal ...” Written Charges, p. 5.
[23] The fifth charge of “showing disregard and disrespect for the Hopi judicial system,” was supported only by an offering of heresay—a newspaper article and alleged “broad public knowledge,” as opposed to testimony under oath offered as evidence of his bad conduct: “By his behavior, LaRance has shown disregard and disrespect for the Hopi judicial system and brought embarrassment upon the Hopi Tribe as a result of broad public knowl *358 edge of his conduct, as indicated by coverage of the incident in the Independent newspaper ...” Written Charges, p. 6.
[24] Charges one, two, and three, and potentially charge five, improperly and unfairly charged Appellant with the conduct of others—he did not arrest himself, nor did he publish a story about himself in the newspaper, none of which are crimes under the circumstances. Only charges four and five could conceivably provide a legal basis, if proven, for Appellant’s removal as Chief Judge.
3. No evidence of cause was presented to the Council
[25] No evidence was offered to support remaining charges four or five in the May 1 Special Session before the Tribal Council. Charge four alleged that Appellant engaged in conduct warranting his arrest—by this we assume that the charging document intended to charge Appellant with having undertaken the conduct constituting disorderly conduct, assault and battery, and failure to appear. Charge five alleged that Appellant showed disregard and disrespect for the Hopi judicial system and had damaged its integrity “by engaging in the conduct that occurred on April 14, 2007.”—by this we assume that the charging document intended to charge Appellant with having undertaken the conduct constituting disorderly conduct and assault and battery. If this is what was intended, the Tribal Council, through its designated prosecuting officer, would have then been required to offer evidence to prove that each element of each crime was proven by at least clear and convincing evidence. Since the proceeding in question occurred before any criminal trial was held on the charges pending against the Appellant, the Tribal Council was obligated to prove by competent evidence presented at an impeachment hearing the underlying faets that formed the basis of these charges. This proof would have likely come in the form of witnesses who would have testified before the Council and other evidence. But this is not what happened at the May 1st Special Session. Instead, the transcript recounts a legislative session whereby a pre-drafted action item and resolution was put before the legislature for a vote. The vote was taken after a debate over process—not after a deliberation of offered evidence. In fact, no evidence whatsoever was presented to the Tribal Council in any form. Interestingly, the debate over the process generated a number of motions favorable to Appellant’s cause—motions to suspend the proceeding, to disapprove the action item, and to table the matter until a later date or until after the. Appellant had his day in court. Debate over these procedural motions took up the bulk of the May 1st Special Session which nevertheless ended with a quick vote to approve the removal resolution despite the fact that the Tribal Council heard no evidence whatsoever on the underlying charges. The majority of the Council treated the matter as legislative and legislated removal instead of hearing evidence and deliberating the truth of the allegations to justify a removal. This was neither legally proper not fair under existing Hopi law. In short the manner in which the Tribal Council proceeded cannot under any stretch of the word be considered the type of “hearing” required by Section 1.5.1. The use of this process was also violative of basic principles of due process of law, separations of powers and judicial independence.
4. Appellant was never asked to respond to charges constituting cause
[26] Additionally, we note that while Appellant was given time to express his opinion about the proper process to be followed in the May 1 Special Session. *359 Appellant, was never asked by the Vice Chairman to respond to the specific charges made against him. And because the Vice Chairman failed to make a case against him (to prove up the charges by offering evidence). Appellant was also never given the opportunity to bring in his own witnesses and put forth his own evidence in his own defense. Consequently, Appellant argues that he was denied the procedural rights required in an adjudicatory hearing under the Indian Civil Rights Act, 25 U.S.C. § 1302.[12] Specifically he argues that among others, he was denied the rights to:
(1) have written charges clearly state the specific acts or conduct that constitute “cause” to impeach;
(2) have the burden of proof placed on the person charged with presenting the case against him;
(3) confront and cross-examine witnesses and the right to call witnesses and produce evidence; and
(4) have the Tribal Council make specific findings of fact and conclusions of law based upon clear and convincing evidence as to each separate charge.
Appellant’s Brief, p. 17. We agree with Appellant that he was denied at least these four listed rights, as well as others, which violated both Hopi notions of fundamental fairness and the due process provision of the Indian Civil Rights Act. We also find that the legislative removal process did not meet the requirements of a Section 1.5.1 impeachment adjudication in that it did not include:
(1)written charges adopted by Council vote that clearly stated the specific acts or conduct that constituted “cause” to impeach;
(2) placement of the burden of proof on the person charged with presenting the case against the judge;
(3) the right of the judge to confront and cross-examine witnesses and the right to call witnesses and produce evidence; and
(4) the right to have the Tribal Council, or their designated presiding judge, make specific findings of fact and conclusions of law based upon clear and convincing evidence as to each separate charge.
We find that Appellant was denied both his property right in his appointment and employment as Chief Judge of the Hopi Tribal Court when the Hopi Tribal Council voted to remove him without providing him with basic due process.
C. Appellant was handicapped in fully defending him,self in the May 1 Council Meeting as his criminal trial had not yet commenced.
[27] We are also troubled that the May 1st Council Meeting was called before Appellant’s trial had commenced on the charges of Assault and Battery and Disorderly Conduct. This handicapped his ability to fully defend himself before the Council. A number of Representatives also expressed concern that the Council should wait for the Hopi Tribal Court to complete its criminal trial before taking action:
“Rep Johnson said ... A complaint has been filed in the Tribal Court so it has jurisdiction over this particular case and whatever Council does will have an effect on the court case, so the Council should leave it alone and have the Court make a decision.... He is not eon- *360 vinced that a crime has been committed.” Transcript, p. 4.
“Rep Seeakuku said ... The Tribal Council is also subject to the same professional behavior and in that spirit he believes that this is premature for the Council to hear this case today. They may have the authority to act on this matter, but they have not reviewed all the documentation to make a fair and impartial decision that he is entitled to.” Transcript, p. 5.
“Rep Seeakuku: Okay, I spoke this morning earlier, and what I said, I want to repeat that. What I said was it was premature for us to be making a judgment in this case, in my opinion. I realize we’ve been handed information now and we’ve had an hour and a half to study that, ... So in my opinion, I am ready, ... to make a motion that we refer this to the Court and we adjourn this special meeting ...” Transcript, p. 19.
The Vice Chairman declined to accept the motion. After no one seconded the motion Representative Seeakuku withdrew the motion.
[28] We find that it was premature, and therefore grossly unfair for the Council to conduct any removal proceedings before Appellant had been convicted of the criminal charges brought against him; to provide no hearing whatsoever on the truth or falsity of facts surrounding his arrest; and to rely instead merely on the fact of his arrest. Presuming guilt from the fact of arrest violates the most basic principles of due process of law and the fundamental fairness principles of Hopi customary law.
V. The Tribal Council breached Appellant’s employment contract
[29] Appellant argues that the Hopi Tribal Council, in adopting Action Item 048-2007 and Resolution H-041-2007, which terminated his appointment and employment as Chief Judge, violated his employment contract. Complaint (First Amended), pp. 10-12. Specifically, he argues that his employment contract, which specifies that “Employee may be removed from the position of Chief Judge of the Hopi Tribal Court, and this contract may be terminated only for cause, in accordance with the procedures of Ordinance 21, Section 1.5.1,” implicitly required the provision of ICRA due process and Hopi fundamental fairness prior to any removal. Id. at 11-12 (referencing the 2002 Employment Contract (Amendment # 2), p. 3.).
[30] Appellees argue that ICRA’s due process requirement was met by the provision of written notice and the opportunity to be heard before the Council. Motion for Partial Summary Judgment Regarding Count Four, p. 7. Appellees further argue that property interests (as opposed to liberty interests) require less process under Hopi law (citing to Monestersky v. Hopi Tribe, 4 Am. Tribal Law 424 (Hopi App.Ct.2002))—and that all that is at stake here is a property interest. Id. at pp. 7-8. Ap-pellees go on to argue that Hopi concepts of fundamental fairness also require only “notice and hearing” under Hopi law (citing Johnson v. Belgarde, No. AP-003-94 (Hopi App. Ct. 1995)); Sanchez v. Garcia, 2 Am. Tribal Law 334 (Hopi App.Ct.1999); Honie v. Hopi Tribal Housing Authority, 1 Am. Tribal Law 346 (Hopi App.Ct.1998); and In Re the Order of the Upper Village of Moenkopi, No. 2007-AP-0001 (Hopi App.Ct.2007).
[31] We are not persuaded that the line of cases cited by Appellees is applicable to the May 1 Special Session. The Monestersky case involved an administra-live hearing to exclude a non-member under Ordinance 46, not a full-blown adjudi- *361 eatory impeachment hearing to remove a Chief Judge of the Hopi judicial system.[13]
[32] Appellees also cite to a line of cases involving the exercise of village jurisdiction over disputes and the process required for tribal enforcement of village decisions (Johnson, Sanchez, Honie, and In Re the Order of the Upper Village of Moenkopi). As explained in Section III of this opinion, we distinguish the villages cases, as governing only village process and requiring more limited fairness protections out of respect for village sovereignty. The minimal fairness protections of notice and an opportunity to be heard are required of villages wishing to obtain tribal enforcement of village decisions. This minimal process, however, falls far below the level of due process required of the Tribal Courts in its day-to day litigation and the Tribal Council in Section 1.5.1 impeachment proceedings.
[33] We find that Appellant’s 2002 contract, by expressly incorporating the removal process of Ordinance 21, Section 1.5.1, implicitly required full due process protections. We further find that the Hopi Tribal Council, in adopting Action Item 048-2007 and Hopi Resolution H-041-2007, without the following specific procedural protections, denied Appellant his ICRA due process rights, and thus breached his contract:
(1) written charges adopted by Council vote that clearly stated the specific acts or conduct that constituted “cause” to impeach;
(2) placement of the burden of proof on a person charged with presenting the case against Appellant;
(3) the right of Appellant to confront and cross-examine witnesses and the right to call witnesses and produce evidence; and
(4) the right to have the Tribal Council, or their designated presiding judge, make specific findings of fact and conclusions of law based upon clear and convincing evidence as to each separate charge.
[34] Appellant requests the following relief: (1) that we declare that the Hopi *362 Tribal Council breached Ms employment contract; (2) that we declare that Action Item 048-2007 and Resolution H-041-2007 are illegal, null, void, and unenforceable; (3) that we declare that his employment contract is valid and binding and that Appellant shall resume his duties as Chief Judge pursuant to the 2002 employment contract; (4) that we award to him all back salary that he would have received retroactive to June 7, 2007; and (5) that we award to him all back contributions to his 401 K plan that he would have received retroactive to June 7, 2007.
[35] We are granting all of Appellant’s requested relief with the following modifications: Appellant is entitled to back pay and back contributions to his 401 K plan, less any amounts that he earned or that were contributed to a comparable plan during the interim.
VI. Conclusions
[36] We find that the Tribal Court erred insofar as it dismissed this action based on sovereign immunity which the Tribe had expressly waived in the Appellant’s employment contract.
[37] We find that both Hopi law and basic principles of judicial independence require a reading of Ordinance 21, Section 1.5.1 to require an impeachment style adjudicatory hearing before an appointed judge can be legally removed from his or her office.
[38] We find that the trial judge below erred in applying only the minimal fairness requirements of notice and opportunity to be heard, instead of full due process, to what should have been the Section 1.5.1 impeachment hearing of May 1, 2007 where Appellant was illegally removed from his position as Chief Judge of the Hopi Tribal Courts.
[39] We find that under Ordinance 21. Section 1.5.1, the Tribal Council, not the Vice-Chairman, is solely and exclusively authorized to adopt written charges, to deliver them, and to call and impeachment hearing to remove an appointed judge. We further find that the Tribal Council has no authority to abdicate or delegate this power to the Vice Chairman and must approve the initiation of impeachment proceedings and the form of the notice of written charges before an impeachment proceeding may commence.
[40] We find that the May 1, 2007 Special Session and the resulting adoption of Action Item 048-2007 and Hopi Resolution H-041-2007 violated Appellant’s right to due process under the Indian Civil Rights Act, 25 U.S.C. § 1302(8), and his rights under Hopi notions of fundamental fairness, where the Special Session was treated as a legislative session (and not an impeachment hearing using an adjudicatory process); where no standard for “cause” to remove was articulated; where the charges themselves were deficient in that they did not focus on the proven conduct of Appellant; where no evidence was offered or considered by the Council before he was removed for cause; and where Appellant was never asked to respond to the charges, nor to present evidence on his own behalf.
[41] Specifically we find that the May 1, 2007 Special Session did not meet the requirements of Ordinance 21, Section 1.5.1 in that it did not include: (1) written charges adopted by Council vote that clearly stated the specific acts or conduct that constituted “cause” to impeach; (2) placement of the burden of proof on the person charged with presenting the case against the judge; (3) the right of the judge to confront and cross-examine witnesses and the right to call witnesses and produce evidence; and (4) the right to *363 have the Tribal Council, or their designated presiding judge, make specific findings of fact and conclusions of law based upon clear and convincing evidence as to eaeh separate charge.
[42] We find that Appellant’s 2002 employment contract waived the Tribe’s sovereign immunity to suit in the Hopi Tribal Court to the extent necessary to resolve any dispute under the contract between the employee and the Tribe—including requests for appropriate relief directly resulting from harms caused by the attempted removal of May 1, 2007.
[43] We find that'Appellant is entitled to back pay and back contributions to his 401 K plan, less any amounts that he earned or that were contributed to a comparable plan during the interim.
[44] This Court takes judicial notice of the fact that subsequent to the May 1, 2007 actions of the Tribal Council purporting to remove Gary LaRance as Chief Judge, he was found guilty of assault and battery. Nothing in this Opinion and Order should be understood as preventing the Tribal Council from now removing Chief Judge LaRance from his position as Chief Judge based on that conviction— should they determine that this crime is of the disqualifying type. The decision whether to now proceed with such charges is an important one that, as this Court has held in this Opinion and Order, can only be made by the Tribal Council. All this Court can and does now hold is that because of the serious problems with the May 1, 2007 Special Session, including violations of Hopi law, separation of powers, judicial independence, due process of law, and concepts of Hopi fundamental fairness that led to the adoption of Action Item 048-2007 and Resolution H-041-2007, such action by the Tribal Council did not and could not lawfully remove Gary LaRance from his position as Chief Judge of the Hopi Tribal Court. Whether the Tribal Council now wishes to take proper action to initiate the removal of Chief Judge Gary LaRance due to his subsequent criminal conviction is a decision only it can now make. This Court expresses no views on that question. Should the Tribal Council decide to pursue such removal proceedings, its actions and the bearing required, of course, must comply with the requirements announced in this Opinion and Order.
VII. Order
[45] We are granting both Appellant’s request to withdraw his Request to Set for Oral Argument and his Motion to Render a Final Decision Based Solely on the Briefs.
[46] We hereby reverse the following portions of the “Summary Judgment” order dated December 16, 2009: the trial judge’s granting of defendants’ Motion for Summary Judgment as to Counts One, Two, Pour, and Five.
[47] We hereby declare Action Item 048-2007 and Resolution H-041 2007 to be illegal, void and of no effect.
[48] We hereby declare that as a result of the foregoing Gary LaRance was never lawfully removed from his position as Chief Judge of the Hopi Tribe.[14]
*364 [49] We hereby declare that the 2002 contract between Gary LaRanee and the Hopi Tribe is valid and binding and that Appellant shall immediately resume his duties as Chief Judge pursuant to his appointment and to the terms of that contract.
[50] Appellant is entitled to back pay and back contributions to his 401 K plan, less any amounts that he earned or that were contributed to a comparable plan during the interim. The parties shall have 180 days from the date of the issuance of this order to agree upon the amount of back pay and back contributions and shall report back to the Court either an amount or a failure to agree. We reserve continuing jurisdiction over this issue.
IT IS SO ORDERED.

. Article I, Section 1, By-Laws of the Constitution of the Hopi Tribe: "The Chairman shall preside over all meetings of the Tribal Council."
Article I, Section 2, By-Laws of the Constitution of the Hopi Tribe: "The Vice Chairman shall help the Chairman in his duties when called upon to do so, and in the absence of the Chairman shall act as Chairman with all the attendant powers and duties."
Article II, Section 3, By-Laws of the Constitution of the Hopi Tribe: "Special meetings of the Council shall be called by the Chairman in his discretion or at the request of four (4) representatives...”

, Ordinance 21. Section 1.5.1: "... Trial judges may be removed for cause by the Hopi Tribal Council, but only after a hearing before said Council on written charges delivered to the judge sought to be removed at least five days before the hearing.”

. Indian Civil Rights Act, 25 U.S.C. § 1302(a)(8): "No Indian tribe in exercising powers of self-government shall ... deprive any person of liberty or property without due process of law.”

. Article V, Section 2. Constitution of the Hopi Tribe: "Any officer or representative may be removed from office for serious neglect of duty, by a vote of not less than two thirds of the Council, after the officer to be so removed has been given a full opportunity to hear the charges against him and to defend himself before the council.”

. This Court subsequently found that Chairman Ben Nuvamsa had not been legally removed from his elected office, and was. during the relevant time periods in this litigation, Chairman of the Hopi Tribe. Appellant's argument is that only the Chairman, or four members of the Council, had the power to call a Special Session of the Tribal Council under the Hopi Constitution and Bv Laws.

. Article V, Section 2, Constitution of the Hopi Tribe: "Section 2. Any officer or representative may be removed from office for serious neglect of duty, by a vote of not less than two-thirds of the Council, after the officer to be so removed has been given full opportunity to hear the charges against him and to defend himself before the Council.”

. "In April 2002 to October 14, 2002, the Tribal Council conducted impeachment proceedings against Mishongnovi Village Representatives Owen Numkena Jr. and Ronald Humeyestewa for ‘serious neglect of duty’ under Article V, Section 2, Hopi Constitution. At the Conclusion of the hearing, the Tribal Council voted not to impeach.” Appellant’s Brief, p. 25.

. "On March 4, 2003, the Tribal Council conducted impeachment proceedings against Vice-Chairman Eljean Joshevama for ‘serious neglect of duty’ under Article V, Section 2, Hopi Constitution. At the conclusion of the bearing the Council voted to impeach and Joshevama was removed from Office. Appellant's Brief, p. 25.
"On November 3, 2004, the Tribal Council conducted an impeachment hearing against Vice Chairman Caleb Johnson for ‘serious neglect of duty’ under Article V, Section 2, Hopi Constitution. At the conclusion of the hearing, the Council voted to impeach Vice Chairman Johnson. See Resolution H-093-2004.” Appellant’s Brief, p. 25.

.In late 2006, the Tribal Council conducted an impeachment hearing against Chairman Ivan Sidney for ‘serious neglect of duty’ under Article V, Section 2, Hopi Constitution. At the Conclusion of the hearing, the Council impeached Chairman Sidney from Office. Appellant's Brief, p. 25.

. Johnson v. Belgarde, No. AP-003-94 (Hopi App. Ct. 1995).

. Article II, Section 3, By-Laws of the Constitution of the Hopi Tribe: "Section 3. Special meetings of the Council shall be called by the Chairman at his discretion or at the request of four(4) representatives ...”

. Indian Civil Rights Act, 25 U.S.C. 1302(a)(8): "[N]o Indian tribe in exercising the powers of self-government shall: ... (8) deprive any person of liberty or property without due process of law.”

. This Court recognizes that dicta in Mones-tersky v. Hopi Tribe, 4 Am. Tribal Law 424 (Hopi App.Ct.2002) suggests that under the Indian Civil Rights Act of 1968, 25 Ü.S.C. § 1302(8), less due process is required where property interests are involved than liberty interests. While it is quite true that where the liberty at stake involves a criminal conviction that Act provides greater protections to the defendant than are available in civil proceedings. Nevertheless, both liberty and property interests can be involved in civil proceedings. The United States Supreme Court has sensibly recognized that the nature of the procedural requirements demanded by due process generally varies with the nature and importance of the deprivation and the necessity of speed, not whether the interest involved is labelled a liberty or property interest. E.g. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). Under the approach adopted by the United States Supreme Court, the label assigned to the interest, that is liberty or property, is not determinative, as suggested in Monestersky. This Court agrees with and adopts the approach suggested by the United States Supreme Court. Insofar as language in the Monestersky opinion suggests otherwise, that language was unnecessary to the decision and is hereby specifically disapproved and rejected as erroneous. In this case, while Chief Judge LaRance’s position as Chief Judge of the Tribal Court may have constituted a property interest, it was a highly significant interest. Furthermore, both his contract and Hopi law expressly required a full adjudicatory impeachment-style hearing to ascertain cause prior to removal, and the proceedings in question significantly impacted judicial independence guaranteed by Hopi law. Consequently, far more process was required than the Tribal Council and the Vice-Chairman provided before due process could be satisfied despite the fact that the interest in question constituted a property interest.

. While Gary LaRance was never lawfully removed as Chief Judge of the Hopi Tribe, this Court recognizes that as a result of the unlawful actions taken by the Defendants in addressing Action Item 048-2007 and Resolution H-041-2007, the Appellant nevertheless was practically prevented from acting as Chief Judge from the date of the Resolution until the issuance of this Opinion and Order. As a result of that fact, other interim judges were brought into the Hopi Tribal Court to fill that vacancy. Nothing in this Opinion and Order should be read as calling into question or invalidating any judicial action taken by *364 any such interim replacement judges from May 1, 2007 until the present date.